• TIIE bill was filed by Mr. Cheves, the attorney-general,.to recover certain arrears alleged to be due-to the State by Benjamin Waving^ late treasurer. It stated that in the year 1791, B. Waring was appointed treasurer of the State, and previous to his entering upon *58 tbe duties of his office, he together with three sureties, T. Waring, C.-Drayton and J. Taylor, executed the bond legally requisite,* to the then governor, for the faithful performance of his- duties ; himself in the penal sum of 10,000?. sterling, and each of his securities in g^QOOZ. payable to the said governor and his successors. The condition of the bond was that if the said B. Waring should faithfully perform the duties of his said office, and should truly pay the monies in the treasury as directed by law, and should pay to Ms successor in office ■all such sums of money as he shall be in arrear to the Slate, then the bond to be void j otherwise to remain in full force. That on his going out of office it was apprehended the said B. Waring was in arrear to the State, .and endeavors were made to bring him to a settlement, but without effect. That the original bond being lost or mislaid, a suit was brought at law against him and securities, on a certified copy of the bond, non est fac-tum was'pleadcd, and the production of the bond was required, whereupon a nonsuit ensued. That theLegis-lature on the lOtli of December, 1807, directed a bill of discovery to be "filed against the said B. Waring to establish the existence of the bond j the arrears due by saiil Waring, and to overreach and set aside any voluntary conveyances made to evade the claims of the State. That the accounts of the said treasurer are erroneous, and he stands indebted to the State. The bill prays a -discovery on all the grounds and facts charged in the bill, the existence and loss of the bond, the suit at law, the nonsuit; and the existence of the arrears charged by complainant to be due by said Waring. To this bill a -demurrer was filed on the 16th of June, 1809, by the de *59 fendants. It was stated for cause of demurrer, tliat at the time the said Benjamin Waring was appointed treasurer, there was no law of the State requiring the treasurer to give such bond, or any other bond, for the due performance of his office as treasurer. Wherefore and for divers other errors and imperfections in said bill, defendants demurred and prayed the judgment of the Court whether they should be compelled to answer to such part of the bill as is demurred to.
The caus.e came on to be tried on demurrer, and it lias been extremely well argued. I am obliged to the bar for the lights thrown upon the question by the production and examination of numerous- authorities, and by the ingenuity of their arguments. As , the case is important in its principles and of considerable magnitude in the interests at stake, I shall be very full in the examination of the decided cases and of the reasonings which are supposed to have any bearing on the questions which arise in the cause.
On the part of the State, it was contended by the attorney-general, 1st. That the bond in question is valid, independently of any statute, on the subject, being neither to do a thing malum in se, or prohibited by common law or statute. 2d. That the bond is substantially though not formally, the bond required by the act of 1771, and may be supported at least to the extent of that act. 3d. That being a bond, good at law, hilt the legal remedy being lost by the bond being mislaid, the Court of Equity will supply the loss, and set up the bond either on proof or on admission ; and that the demurrer in this case •was an admission of the bond Wi forth in the bill. • In support of these positions it was insisted that a bond given-by one individual to another voluntarily, is good, and would hind the obligor ; that the State consenting to try its causes with the same fairness and justice, and even equality as an individual was entitled to the benefit of this rule. That the bond given by Mr. Waring and his securities to the governor, was given voluntarily and ought to hind them ; more *60 especially as (though not strictly according to law) it w^s ^01’ a valuable consideration, to-wit, a lucrative office, bestowed on him by the State. That the State assenting to take this bond so voluntarily given in lieu of that pi'ecisely prescribed by law, the act was complete an(j became binding on both, That,the bond is not oppressive to individuals, nor malum in se, nor prohibited by any law, moral or political. That the act prescribing a particular bond did not prohibit another bond, which if given voluntarily, would be as obligatory as if prescribed by law ; at any rate to the extent of the bond prescribed by law. That the differences of the bond taken, from that prescribed by the act of 1771 were not very material, and that in sotting up the bond the Court could modify the liability so as not to exceed the liability under the prescribed bond. That this bond, though with a penalty, was in fact a covenant to do certain things j ust and proper in themselves ; and equity requires it should be supported. That the law in no case declares voluntary bonds void, but on considerations of public policy, and surely the same policy ought to sustain an equity to make principal and his securities liable, for not doing what he engaged to do. That Courts of Equity do set up bonds against principals, and also make no discrimination between the security and the principal in doing so, if the principal was so bound that the bond would be set up against him. That there was no laches in this case on the part of the State; and if there had been, it ought not to avail the parties, as this is a fraud on the State; and at all events, this was not the proper time or stage to set up that defence. All these positions were denied, and all- the arguments in their support were answered by defendant’s counsel, who insisted-that the bond was void at common law, and for want of conformity to the statute under which it professed to be taken. That it would be mischievous and dangerous, and tend to oppression to permit the governor or any -other public officer to demand and take such bond as he chose to prescribe, from persons elect *61 ed to office, as a condition of permitting their entrance into office. That Legislative appointments might be defeated by the governor requiring bonds not demanda-ble by any statute law. That no act authorised the governor to take such a bond, but prescribed a different one 5 consequently the one taken was void. And that the bond being void at law, the Court of Equity will not set it up, or assist in the discovery and relief. That the diversities between the bond actually taken and that prescribed by the act of 1771, are great, numerous and important, and so vary the engagements of the securities as to make an engagement totally different from those they would have entered into under the act of 1771; yet the bill charges that the bond was taken under the act of the Legislature. That securities are favored and not made responsible beyond or different from the engagement they did make, conformably to law. That those who ask equity should shew no default on their part. Whereas there has been great laches here. That securities not being bound morally, the Court will not in cases of bonds, when the legal remedy is lost, set them up against them. That where the Court has set up a bond, as a covenant, it is where both obligors had a benefit, not in a case of security. That the demurrer does not rest on the loss of the bond which may he supplied and revived by proofs j hut on the ground that the bond was void at law.
In support of these various positions and arguments, many cases were cited by both parties, which I shall now proceed to examine. The attorney-general cited 1 P. Williams, 181, 9, Mitchell vs. Reynolds. This isn leading case decided in the King’s bench, (though reported by an Equity reporter) and it does shew that a bond given to restrain the party from trading in a particular place is good $ because it is neither prohibited by law, nor malum in se, nor a general restriction of trading. But this case expressly turns upon there being a reasonable consideration given to the obligor to induce such bond. And upon an elaborate examination of the *62 cases and discussion of tbe doctrine, the result seems to that the true distinction in such cases is not between promises and bonds, but between contracts of this kind, with or without consideration, and not being a general restraint. All the cases cited from Strange 739, refer-re(j jn 1 Bacon, 645, title K. look up to the above case as the leading case which settled the doctrine. The cases cited in 1 Powell, 172, 3, relative to the sheriffs taking bonds, declare them void, unless the statute be followed, because such bonds may be abused to purposes of oppression. The attorney-general has cited the case of Ibs vs. Boxall, 2 Bos. and Puller, by which it was decided that a bond taken from an individual (though not prescribed by law) by commissioners appointed under an act of Parliament, in order to indemnify them against expenses of suits, in which they are directed to be made defendants, is not void: though a fund was provided by the act out of which law expenses were to be paid in certain cases. But upon examining the case it appears that to the Judges it was very doubtful, or more than doubtful, that the case in which the commissioners took a bond from the party desirous to have a trial under the act, was not one of the cases provided for by the act, the expenses of which were to be paid out of the fund. Then it stood thus : Á party whose interests required that a trial should be had under the act of Parliament, requested the commissioners to go into this expense. They refuse it unless he will indemnify them against the expenses. He consented and gave the bond, and the Court supported it. This surely cannot apply to the case before the Court. There was nothing immoral or prohibited in the commissioners taking this ■bond. The attorney-general cited the case of Bishop vs. Church, 2 Vesey, 181, 373, which was a case of joint bond by two j one of them died and the other became a bankrupt. It was decided that the obligee may recover in Equity against the representatives of the deceased, though the legal lien was gone. In this case it must be observed that though the ncnalty was joint, the con *63 dition was several 5 and the money was borrowed by both, as partners : so that it was not a case of security-ship, and there was no doubt of the original legality of the bond. •• The same observation applies also to the case of Simpson vs. Vaughan, 2 Atk. 31, 2, both joined in the borrowing,, and the'bond was made joint by fraud or mistake. In the case of Acton vs. Pearce, 2 Vern. 480, a bond given before marriage to intended wife for 1000L in case she survived the obligor, was held to.be good, and set up after his death, though extinguished by the marriage. But this case turned upon its being, drawn by an. unskilful person, the parson of the Parish 5 and . the Court always favors provision for wife, as this was intended to be, and it is not a security case. -In the case of Crosby vs. Middleton, Pre. in Ch. 309. and Digest 337, the Court did hold security bound, though the bond coidd not be supported at law. But it was decided expressly on the ground that the omission of the security’s name in the bond was a mex*e clerical error 5 for he had expressly agreed to be bound, and had signed and settled the bond, and no illegality in doing so. The two cases from Croke Elizabeth, Clifton vs. Webb, p. 808, and Blacbourn vs. Michebourn, p. 832, are cases where the sheriff took bonds 5 the validity of which were questioned by the principal obligor, and held to be good, because the form of the bond was pursued, and the matter complained of was a regulation for benefit of the sheriff. The attorncy:gcneral cited Bagshaw vs. Bosley, 4 Term Rep. 78, 9, 801, which was the case of a bond demanded by the patron of a living, on presentation, and given by the incumbent, conditioned to reside on the living or to •resign, if he did not return to it after notice. This was held by Lord Kenyon to be good. This is certainly a strong case to shew that a bond may be taken, at common law, in a case not malum in se, not prohibited by positive law or by public policy. And it is supposed by the ancient case of Dobson vs. Carew, Croke Eliz. 705, where a bond was held to be good, the condition of which was that the obligor should be always ready to *64 §'^ve evidence in Court and testify the truth. Bi . these cases do not appear to meto apply to the case before the Court. In the case of the presentment to the living, it moved as a free gift to the person, and the donor had a right to prescribe terms, and the patron had an interest C0Upje<j with liis right. Besides the taking a bond in such cases was neither malum in se, nor prohibited, nor against public policy. It was contended by the attorney-general that there was no laches in this case, and If there had been laches, it could not be set up in the case as there was afraud against the State, and if it could, this was not the place or stage to do so. The defendant’s counsel contended that the bond was void. 1 st. At common law. 2d. Because not made conformably to the statute on the subject, passed in 1/71. In 5 Comyn’s digest, title Officei», p. 148, which was cited, it was laid down that “ no bond or writing may be exacted from the subject to the King or other' person, to do that, which by law he was bound to do to the King, and such bond will be void, and defendant may plead duress.” This is supported by Lord Coke in 3d Inst. p. 149., except the last words, “ and defendant may plead duress,” wlpch are not to bo found in 3d Inst. The defendant’s counsel also insisted that the bond was not maintained under the act of 1771, because it diifers materially from the bond prescribed by that act. These differences relate to the person to whom the bond is made payable, to the penalty, to the number of securities and the extent of their liability. Defendant’s counsel contended that securities are always favored both at law and in Equity : not wildly or incautiously, but discreetly andnmder proper circumstances ; and they cited the case of Shalton vs. Rastall, 2 Term Rep. 366, in the King’s bench, where in an action for money had and received (which in that Court is analagous to a bill in Equity, and has been emphatically called a little bill in Equity,) against a security to a bond for an annuity which had become void for want of recording, the Court refused to make the security liable, because the security had not received the money *65 he bait 'no benefit and was not bound morally. In 1 Vernon, 196, Radcliffe vs. Graves, the Lord Keeper decided that he would not make the sureties liable further than they were answerable at law, in a case where the bonds had been got up and no remedy against them at law.
In Francis’s Maxims 71, 2, the same doctrine is stated. In the case of Harrison, executor of Munge, vs. Margt. Field, executrix, 2d Washington’s Rep. 136, decided in the high Court of Appeals in Virginia in 1795, on an appeal from a decree in the Court of Chancery, it was determined by all the Judges of the Court present (one only absent) that a Court of Equity ought not to assist in setting up a bond against securities, where the legal remedy was lost. It was the case of a joint bond, by twd persons, one of whom was security. The security died i the principal was insolvent. The Court of Chancery by its decree made the representatives of the security liable. The Court of Appeals reversed-the decree, on the ground, that the security being neither the borrower nor the user of the money, ought not in equity to be further or otherwise liable, than by his contract at law-. That it was a joint obligation (not made so by any apparent fraud or mistake) and subject to the legal consequence, to-wit, the discharge of the security if he died before the borrower. That there was no moral obligation on the security to pay ; he was bound only by the bond itself. There was no antecedent contract between him and the lender to the principal, whereon to found an equity for the interposition of the Court of Equity.
The same doctrine was held in the case of a joint note, decided in the Court of Appeals in Virginia, 1795. The case of Chandler’s executors vs. executors of Neal, 2 Henning and Mumford’s Reports, p. 124, 131.
Several other cases were cited by defendant’s counsel,, which not appearing to me to have so strong a bearing upon the case before the Court, as those already noticed, it is unnecessary to advert to them, except one, *66 which was cited by Mr. Bee, from 4 Dallas, 282, the Commonwealth of -Pennsylvania vs. the Securities of Bayntun, which •shows the great caution of the Courts every where not to'extend the liability of securities be-'effect of the bond.
In this important cause I have sought light from our-•own decided cases, as far as I have been able to obtain them for the industry of thé bar had precluded the -necessity of researches into the .published cases.
I have found but two which seem to-have any material -connection with the one before the Court 5 one decided recently in the Court of Common Pleas. It was the •case of C. B. Cochran, Intendant of Charleston vs. •Simpson Williams. In that case a suit was brought on •a bond given by him, as Pilot, to the then Intendant. The defendant demurred on the ground that the bond was not taken under any lawful authority ; and that it was therefore extorted by color of office and void. It 'appeared by an old act of the Legislature, (of 1734,) that pilots were to give bonds for the faithful performance of their duty under direction of the Commissioners of Pilotage. By the charter, the powers and duties 'of Commissioners of Pilotage were-devolved on the City Council, and by an ordinance they had prescribed ’-the giving bonds by Pilots, as.under the act of -1734, without-saying to whom they should'be made payable. The whole Court were of opinion, that the bond was valid, and I should have no doubt of it; but this case only goes-to 'show that -the bond might well enough be made to the -governor.
The other case is that of Executors of Shubrick vs. Russell, Executor of Livingston, decided in Equity in March, 1793. It was the case of a joint bond, and the •security died first; therefore it was contended he was discharged at law-, -and equity Would not extend it.. This ground does not seem to be so much relied upon as another, that obligee had varied the security and so released the original security. It was determined against the executors of the securities on both points,- *67 TMs decision differs from the Virginia cases ;■ but it ° should be remarked on both that the bonds were 01%in* ally valid, and the legal remedy was lost by subsequent matter..
Having thus anxiously explored for information every quarter, to guide us to a right conclusion in this* case, I am now to state what appears to me to be the result of our enquiries.
The first question is,, could this bond be considered good and valid at common law ?
The doctrine quoted from 5 Comyn’s, who refers to B-Insts. and which declares, it unlawful to- exact bonds from the subject to the King, to do that which by law he was bound to doy seems so me to be bottomed on sound policy, whether if applies to individuals or to public officers. It would open the door to great abuses and oppressions, and even favoritism, if it were permitted. A person is elected to an office, and is by such election entitled to enter upon it, do the duties and receive the emoluments. The law requires no bond, or prescribes a particular one. The governor m to sign all commissions $ he however undertakes-to demand a bond where none is required by law, or with greater liabilities and security than the law directs.
■ The officer must either resist and be kept out of his. office to his own prejudice, and to the inconvenience of the public, or submit to an arbitrary power exercised over him, unknown to the constitution and the laws. This surely could not be called a voluntary bond. It would more correctly be called a submission bond.
The oppression and injustice to which this might lead, might be very extensive and mischievous.
There is no reason indeed to believe that any coertion was used in this case, and such is the constant responsibility of our great officers, under our admirable system of government, that it is not probable abuses would frequently occur. But the provident jealousy of the law guards against abuse, by forbidding the exercise of such nngranted powers, and declaring the acts done under *68 them to be invalid ; else the line could never be drawn, nor ^ie door a^usos evor sbut.
I feel myself therefore bound to say, that in my judgment the public policy requires that a bond taken from public officex*, not warranted by law, a; a condition 0£ pjg entering on his office, should je considered null and void.
The next question is, can the bond taken from the treasurer, be supported under the act of 1771 ?
The differences between the bond prescribed by the statute, and that actually taken, consists, as has been, stated, in four particulars. It is made payable to the Governor instead of the King. It differs in the penalty, in the number of secui’ities, and in the nature and extent of their liability.
With respect to the first I should have thought that it was well enough that the bond should be payable to the Governor. * ‘He does not indeed succeed to all the King’s prerogatives, but he is the chief executive magistrate. He transacts most of the important business of the state, and no prejudice could result to the parties from the use of his name $ to whom payable was not an arrangement interesting to them or made for their benefit.
But this is not the case with the other differences, between the bond prescribed and that taken. The penalty is increased, the number of securities to divide the burthen is diminished, and the extent of liability is increased.
These are great and essential differences, operating injuriously upon the securities, and I cannot think that the bond actually taken can be supported as a valid one, under the authority of an act which prescribed one so essentially different.
If then this bond is not supportable at common law, or under the statute, this Court cannot set it up, or give it effect. There would, be no equity in this : it would be to give effect to what the law prohibited, not to what it enjoined. It would be astute to make secux’itics lia- *69 Me, under the name and sanction of equity, when the law itself would not make them so.*
Demurrer^to contrary to sustain'
I do not wish to be understood to say that a Court of Equity would not set up a lost bond against a security, where the bond was originally a legal one, and no circumstance had occurred to put an end to the obligation$ in such cases the surety is not discharged by the loss of the bond, and the Court by its interference would only relieve against the casualty, by setting up the evidence of the debt.
On the ground of laches, I shall say but little. There does appear to have been some laches, but I have not seen enough of the case, coming on as it did, on the bill and demurrer, to enable me to judge with any certainty on that point. I should not therefore feel at liberty to decree, singly on that ground. Upon the whole of the case however I feel myself obliged to sustain the demurrer, and to dismiss this bill. In doing so I have this consolation, that if the principal defendant, Benjamin Waring, the treasurer, has really cominitted any default in his administration of the finances entrusted to him, he is liable in a bill to be compelled to account and to pay to the uttermost farthing what he may be found to be in arrear. The effect of this decree will not be to absolve him from his responsibility, but to prevent his being made liable with his securities in a shape not warranted by the laws of the land; the maintenance of which in their integrity is of more value to. the citizens than all the funds in the treasury.
I have also another high consolation, which is, that having done my duty to the best of my judgment, I have *70 thebappiness of knowing that if I am in error, that error will be corrected by a higher and a wiser tribunal, wWch I am always ready to submit my judgment.
Mr. Cheves, attorney-general, for appellant.
Every bond given voluntarily is good and binding, unless malum in se, or against some principle of policy. There was a privity in this case between the person giving, and the person taking the bond. The governor is the representative of the state, and is bound to take care of its interests; and he requires bonds to secure the funds of the state. The assent of the party interested may be implied, Pow. on Con. 8. The State has assented and accepted the bond; and there is no good reason why the State should not have the benefit as well as an individual would in a like case. The great question is, whether the bond is valid at common law, Cro. Eliz. 862, Cooper vs. Goodrich. A stranger may receive a deed for a corporation, and the corporation assenting it is obligatory. There is no statutory prohibition against taking such a bond : no prohibition on the principle of common law ; nothing immoral or impolitic. The usage has been for the state officers to take •such bonds. The act of 1771, prescribing the mode of taking bonds from treasurers, does not negative the mode pursued in this case of taking a different bond. The case from 5 Comyn’s, title Officer, p. 148, 9, is supported only by Int. 3d p. 149, and that is founded on a statute ■'(1 Edw. 3 C';. 15,) not in force.
*70 From tliis decree an appeal was made on the follow-mg grounds :
1. That the bond was legal and valid, independent of the acts of the Legislature prescribing the bond to be given by the treasurer, not being repugnant thereto.
2. That though not in perfect accordance with those acts, yet to the extent of the provisions of the act of Assembly, it ought to have been declared obligatory and valid, as a covenant or engagement of the obligors.
3. That for other reasons the bond ought to have been supported.
(Signed,) Cheves, attorney general.
The hearing of the appeal came on before the ChanCellors Rutledge, James, Thompson, Desaussure and Gaillard, and the cause was fully argued.
There is no temptation to the Governor to abuse this power, to individual oppressionand public policy requires that he should have this power, to require bonds •of public officers. If the bonds taken differ, a little from those prescribed by law, the Court will not declare them void, but rectify the error.
This is not like the cases of bonds in restraint of trade, ■see 1 P. Wins. 181, 9, Mitchell vs. Reynolds | 2 Com. Con. 472 ; see 4 D. and E. 81, Bosford vs. Ragshaw 5 Comyns on Contracts, 497, Cowper, case of Jones vs. Randall. There is no foundation for the opinion, that all bonds taken as this has been are void. Each case should depend on its own ■ circumstances; And if the: bond is not held valid to its extent, it is’ valid as far as the law goes, 2 Vesey, 373, Bishop vs.’ Church. ' A bond is an: agreement, a covenant binding as far as it is legal. The penalty is only accessory to the • principal obligation ; and the nullity of the penalty will not affect the agreement, 1 Com. rep.'338,-Pothier 222, 22-5.
But it is contended that at all events the securities are not bound. But there is no principal of equity or morality, which should exonerate the security in such ■ a case, 2 Eq. Cas. Abr. 188.
Mr. Bee, for. respondent.
Suppose a bond taken contrary to the statute, and not maintainable at • law ? Surely this Court would not set up such a bond against the sureties in the bond, Comyn’s Rep. 441. An obligation taken colore officii, and oppressive, is void,' 3" Wilson, 539, 2 Tern. 293 5 a son bound as security with the father, and the bond void at law : > the son is not ’ bound to pay.
If the Court doubts, the demurrer ought to be sustained, because the state officers took an improper bond, and innocent sm’eties ought not to be bound, unless ° legally bound.
Mr. K. L. Simows, for respondent.
.The bond not being given under any lawful authority, is a nullity and void. It is widely different from the bond prescribed by ^]ie statute of 1771, to be given by the treasurer elects and at all events the Court cannot hold the securities liable under such an irregular, unauthorised and void bond. Though there be nothing immoral in a bond, if it invades any principle of sound policy it is void. Such are marriage brokerage bonds ; bonds not to engage in trade, &c. The bond taken from the treasurer is of this description. The public may confide an office to a man for his probity, and require no security, or a reasonable one. Yet a Governor may take upon him to demand securities not required by law, to any amount and with any number of securities, and on any terms his caprice may dictate, not only from treasurers, but Judges and all other officers. The weak, the timid, the poor would submit, rather than he kept out of office : only those of a strong character would resist. Great abuse's may take place. ■ It is said that there is no fear of abuse ; but the constitution and the laws are apprehensive of abuses. They limit and regulate the acts of the chief magistrate, as well as others ; and acts of power done contrary to or beyond the laws are not valid.
The principle laid down in 5 Comyn’s, 148, 9, does not depend on statute, but on the common law principle. The statute mentioned in 3 Institute, came only in aid of the common law, 2 vol. Reeves’s Hist, of the common law, p. 141, 2 ; 3 vol. Reeves, 143 ; 1 Powel on conts. 103. Sheriff taking bond for fees void. The common law principle is not denied even in the cases cited, 2 Bo-sanquet & Puller, 89, 4 Term. Rep. 78. Judge Peters has decided in Pennsylvania, that a bond taken different from that prescribed by law is void. The act of 1771 prescribing one mode of taking a bond, is itself an exclusion of any other mode. The bond taken is substantially different from that prescribed. The act prescribes five securities, each answerable for a proportionate part. The bond taken has three securities, each answerable for the whole. The act prescribes one penalty; the bond taken is for a larger penalty. The act of 1771, was for the ease of the treasurer, and the curities to be so divided. The bond taken deprives them of that ease ; see 5 vol. Co. rep. for the case of sheriff’s bonds. A bond taken differently from that prescribed by statute is void j as a bond taken without securities where the statute requires them, 1 Sander’s rep. Williams’s edition, 161, note 1; Plowden’s rep. 68. Any addition to a bond prescribed by law, makes it void.
With respect to the securities, there is a great and obvious distinction between them and the principal. The principal is morally bound to perform his duties in office, and pay over money entrusted to him, without a bond. The securities are bound only by the written engagement, by the bond, and if that be void, their responsibility is at an end. They made no contract but what is on the face of the bond : destroy that, and they are not liable. And not being morally bound, the Court will not set up a void bond against them, see 2 term rep. 366 } 4 Bos. and Puller, 41; 2 Washington’s rep. 136 ; 1 Vern. 196.
Mr. Cheves, attorney-general, in reply,
admits that if the Court thinks it is against sound policy to permit such bonds to be taken, the demurrer must be sustained. But the Court will not readily decide on whole classes of cases. It will allow each case to stand on its own merits ; andffhere is no pretence of any intended oppression or abuse in the case under consideration ; admits the penal part of the bond taken, being different from that prescribed by the act of 1771, is not obligatory : yet it is good as a covenant, and operative to the ex • tent of that statute. Relies on case on Cro. Eliz. 808, 862, where it was decided that a bond taken from the sheriff, with one security is good; though the statute prescribed two securities.
As to the exoneration of the securities, he insists, they remain liable under the bond, as an agreement; and at events t5^ey cannot prevail now; for they and the principal, who is plainly liable, have joined in a demur-rerj anc[ the decree sustaining the demurrer must be supported in whole or not at all. ,As it cannot be support-e(j ag ^jie prinCxpaJ, it cannot as to the securities.
The Court of Appeals delivered its decree, stating briefly that the bpnd ought to have been supported, and the demurrer overruled. The Court thei'efore reversed the decree of the Circuit Judge, and overruled the de-mux’rer, and ordered the defendants to answer the bill. Judge Desauss are adhei’ed to his opinion in the Circuit Court.

 The bond prescribed tobe given by the State Treasurer, was under a Colonial law of the 23d of February, 1771. By this act it was ordained that the Treasurer should g-ive bonds in the. penal sum of 40,0001. Proclamation money to His Majesty, his heirs and successors, for tbe due execution of the said office; “ and give good security to the number of live persons or upwards, who shall be approved by the Governor and Council, and shall be bound, each security for a proportion of the said sum, equal to the number of such securities, andnot each for the whole.”

 I think this case is stronger than any which have been cited or examined ; and differs from them in this essential particular: That according to the preceding reasoning, the bond in this case was never valid, never obligatory. In the other cases they were valid, blit lost their obligatory power by matter ex post facto. It is impossible to set up the former. The cases are divided as to the latter. But I incline to think that even in them, where the bond was originally valid, as a joint bond, and the legal obligation ceases, by the death of the security, that is by operation of law, equity should not set up the bond, because the equity being equal, the law should prevail.